UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN DOE | CIVIL ACTION |
| VERSUS | NUMBER: 19-11232 |
| CHEVRON NORTH AMERICA EXPLORATION AND PRODUCTION COMPANY | SECTION: "J"(5) |

**<u>ORDER AND REASONS</u>**

Before the Court is Defendant's, Chevron North America Exploration and Production Company's ("Chevron's"), Rule 12(b)(6) Motion to Dismiss. (Rec. doc. 11). Plaintiff, John Doe, filed an opposition memorandum (rec. doc. 18) and Chevron filed a reply memorandum. (Rec. doc. 21). The Court heard oral argument on the motion on January 15, 2020. (Rec. doc. 23). After thorough consideration of the pleadings, the law, and the argument of counsel, the Court denies the motion to dismiss.

**I.    RELEVANT EVENTS AND PROCEDURAL HISTORY**

Plaintiff filed this lawsuit against Chevron anonymously, alleging claims for national-origin discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), Title I of the Civil Rights Act of 1991, and 42 U.S.C. § 1981. (Rec. doc. 1).[1] In his 30-page Complaint, Plaintiff alleges that he joined Chevron as a helicopter pilot in December of 2008 and that for several years throughout his employment with Chevron, he was subjected to "discrimination, racial slurs, harassment, a hostile work environment, retaliation, and a retaliatory hostile work environment because of his national

---

[1] Plaintiff, who was born in Puerto Rice, insists in his opposition memorandum that his complaint under § 1981 is for race discrimination, not national-origin discrimination. For the reasons explained below, the Court need not decide whether Plaintiff properly pleaded a cause of action for race discrimination.

origins. . . ." (*Id.*). Plaintiff's Complaint is replete with all manner of alleged indignities he claims were visited upon him because of his national origin/race and in retaliation for complaining to superiors about the discriminatory treatment. (*Id.*).

Before filing his Complaint on June 14, 2019, Plaintiff initiated a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 25, 2017. (*Id.*). On March 18, 2019, the EEOC issued to Plaintiff (with a copy to his attorney in this matter, Wanda Anderson Davis), a Notice of Right to Sue Letter. (Rec. doc. 1-2). As noted above, Plaintiff filed this lawsuit on June 14, 2019, 88 days after the Right to Sue Letter was issued.

There is an entry in the docket sheet for the case (of which the Court takes judicial notice) dated June 17, 2019, that reads "Spoke with attorney she wants to wavier *[sic]* summons." (Docket entry foll. rec. doc. 1). Consistent with this statement, the entry on the docket sheet for record document number 1 – the Complaint itself – was modified on June 17, 2019 to add the language, "SUMMONS BY WAIVER."

Seeing no indication of any action taken on the case by Plaintiff as of late September 2019, on September 25, 2019 this Court issued an order stating:

> Over 90 days having passed since this case was filed and issue not having been joined, in accordance with Local Rule 16.2 and Rule 4(m) of the Federal Rules of Civil Procedure, Plaintiff is hereby ordered to show cause, in writing and on or before October 9, 2019, as to why his lawsuit should not be dismissed for failure to prosecute.

(Rec. doc. 3).

Plaintiff's counsel responded on October 9, 2019, filing a "Response to Rule to Show Cause" and stating in pertinent part:

2

> Plaintiff respectfully responds that research did not reveal an agent for Chevron North America Exploration and Production Company; so, on July 1, 2019, Notice of A Lawsuit and Request to Waive Service along with a letter identifying the real name of employee John Doe was mailed via certified mail to Chevron North America Exploration and Production Company through Steven W. Green, President of Chevron North America Exploration and or the Agent for Service at the corporate address of the employer, Chevron North America Exploration and Production Company. As evidenced by the attached electronic notification [rec. doc. 9-1], service was made by certified mail of the Notice of A Lawsuit and Request to Waive Service on July 8, 2019. Since no reply was received to the Notice of A Lawsuit and Request to Waive Service from Steven W. Green, President of Chevron North America Exploration, and/or Agent for Service, additional research was done, and it was determined that on information and belief, Chevron North America Exploration and Production Company is a division of Chevron USA, Inc.; so, on September 25, 2019, a summons was requested to be issued to the agent for Chevron North America Exploration ( Chevron USA, Inc.) (Rec. Doc. 4). On September 26, 2019, summons was issued (Rec. Doc. 5) and on September 27, 2019, summons was mailed by certified mail in accordance with the Louisiana Long Arm Statute to Chevron North America Exploration and Production Company (Chevron USA, Inc.) Through Registered Agent, Princticess Hall Corp. System Inc, 211 East 7th Street, Suite 620 Austin TX 78701. . . .

(Rec. doc. 9).

In between the time the Court issued the Rule to Show Cause and Plaintiff's October 9, 2019 response, the docket sheet revealed that summons was issued to Chevron and that Chevron had already filed a motion for extension of time to answer Plaintiff's Complaint. (Rec. docs. 5, 6). Chevron having been served and having specially appeared to file that motion, the Court deemed the Rule to Show "satisfied." (Rec. doc. 10). The very next document filed in the record was the present motion to dismiss. (Rec. doc. 11).

3

## II. THE PARTIES' CONTENTIONS

### A. *Chevron's Arguments*

Chevron seeks dismissal of Plaintiff's Complaint on numerous grounds. First, it seeks dismissal for Plaintiff's failure to perfect service of process within 90 days of filing his lawsuit, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. Chevron argues that, regardless of the result of the Court's Show Cause Order, Plaintiff's "excuse" – that counsel could not locate an agent for service of process – cannot be considered good cause for failing to timely serve Chevron, particularly given that he had already engaged Chevron in EEOC proceedings before filing suit.

Relatedly, Chevron argues that, because it was not served in the requisite 90-day period, the separate 90-day limitations period to file suit from receipt of the EEOC Right to Sue Letter,[2] while interrupted upon filing of suit, began to run again when service was not effected within 90 days of the filing of the suit. According to Chevron, Plaintiff's suit was filed with only two days left in the limitations period (it is actually nine days, as discussed below). Once the 90-day period for service under Rule 4(m) elapsed on September 12, 2019, the limitations period began to run, meaning that Plaintiff's claim prescribed before summons was requested on September 25, 2019.

Unrelated to these timing-based arguments, Chevron suggests that the Court should dismiss Plaintiff's lawsuit because he filed it anonymously, despite the fact that, according to Plaintiff and apparently undisputed by Chevron, the company knows the identity of the Plaintiff.

---
[2] 42 U.S.C. § 2000e-5(f).

Chevron also attacks the merits of Plaintiff's discrimination, hostile work environment, and retaliation claims, arguing first that Plaintiff's claim of national origin discrimination is not actionable under 42 U.S.C. § 1981 (whereas a claim of race discrimination would be). Chevron further argues that most of Plaintiff's grievances do not amount to the sort of "adverse employment actions" required to state a claim and that the only "adverse employment action" alleged by Plaintiff is his termination. As to that termination, Chevron argues that Plaintiff failed to allege any facts that Chevron intended to discriminate against him, that the individuals who terminated him engaged in racially discriminatory conduct, that he was replaced by someone outside his protected group, or that he was treated less favorably than a similarly situated comparator.

As to the hostile work environment claim, Chevron argues that Plaintiff failed to allege harassment based on race that was sufficiently pervasive and severe as to affect a condition, term, or privilege of employment, as required to state such a claim.

Finally, Chevron argues that Plaintiff does not allege any facts supporting a conclusion that he was retaliated against for reporting race discrimination against him, either internally or to the EEOC. It repeats its arguments that any reports that Plaintiff made about discrimination were based on his national origin, which Chevron says is not a protected activity under the statute. Moreover, Chevron argues, Plaintiff was already on paid administrative leave when he complained first to the EEOC and he can therefore not establish a causal link between his reporting of discrimination and his ultimate termination by Chevron.

5

*B. John Doe's Arguments*

Plaintiff submits that his Complaint was timely filed, pointing to the outcome of the Court's Rule to Show Cause why Plaintiff's suit should not be dismissed for failure to prosecute. He argues that, when the Court deemed that Rule "satisfied," it impliedly found that Plaintiff had established good cause to extend the period for serving Chevron under Rule 4(m). In any event, Plaintiff argues that, because his counsel could not locate an agent for service of process for the particular Chevron-based entity she was trying to sue, there was good cause under Rule 4(m) for her failure to serve the Defendant within 90 days.

Similarly, Plaintiff argues that, because the period of time to serve Chevron either was or should be extended for good cause, the 90-day limitations period to file suit was or should be tolled until service was ultimately perfected, so that Plaintiff's claims are not, in fact, untimely under 42 U.S.C. § 2000e-5(f).

As to the issue raised by Chevron concerning Plaintiff's failure to identify himself in his Complaint, Plaintiff argues that "including his real name in the pleadings could result in serious bodily injury up to and including death" because "prior to working for Chevron [John Doe] worked as an Operations Coordinator Manager running and supervising special/sensitive missions in support of the United States government that requires anonymity." (Rec. doc. 18 at p. 4). In any event, Plaintiff posits, Chevron already knows his name because of the EEOC charge he lodged against Chevron.

As to the merits of his various claims for discrimination, hostile work environment, and retaliation, suffice it to say that Plaintiff believes that he has alleged – over some 23 pages in his Complaint – a plethora of facts sufficient to state claims that are facially plausible.

6

## III. LAW AND ANALYSIS

### A. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a claim if the plaintiff fails to plead factual allegations in support of his claim that would entitle him to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). Those "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009), *cert. denied*, 559 U.S. 936 (2010) (quoting *Twombly*, 550 U.S. at 555). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the non-moving party, *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009), but the Court need not accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* at 677 (citing *Twombly,* 550 U.S. at 555).

### B. Timeliness

Chevron urges dismissal of Plaintiff's Complaint for the dual reasons that (1) it was not served within 90 days of filing as required by Rule 4(m) and (2) because it was not timely served, the applicable 90-day statute of limitations on Plaintiff's claims ran before he perfected service on Chevron. A review of the pertinent dates and some procedural history

is in order to determine whether this Court should or must dismiss Plaintiff's claims as untimely.

Plaintiff filed his charge of discrimination with the EEOC on August 25, 2017. (Rec doc. 1, p. 3). On March 18, 2019, the EEOC issued to Plaintiff (and his attorney in this matter, Wanda Anderson Davis), a Notice of Right to Sue Letter. (Rec. doc. 1-2). There is no indication in the record when the Notice was received by Plaintiff or his counsel. Plaintiff filed this lawsuit on June 14, 2019, 88 days after the Right to Sue Letter was issued. (Rec. doc. 1).

Chevron has argued that Plaintiff had to file suit by June 16, 2019, which was 90 days after <u>issuance</u> of the Right to Sue Letter. (Rec. doc. 11-1 at p. 5). That is not a correct calculation, however, as the 90-day period runs from Plaintiff's receipt of the Letter. *See* 42 U.S.C. § 2000e-5(f); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002), *cert. denied*, 537 U.S. 1200 (2003). Moreover, because there is no evidence in the record as to exactly when Plaintiff received the Letter from the EEOC, the Court presumes that he received it seven days after mailing, or March 25, 2019. *Id.* Accordingly, Plaintiff actually had until June 23, 2019 to file suit, so when he filed his Complaint on June 14, 2019, the limitations period was interrupted and tolled with nine days left.

It is undisputed that service was not perfected within 90 days of filing suit, as required by Rule 4(m) of the Federal Rules of Civil Procedure. Plaintiff's counsel states – and Chevron does not dispute – that she was unable to locate an agent for service of process for the named Defendant, so she mailed a "Notice of A Lawsuit and Request to Waive Service" via certified mail to Steven W. Green, President of Chevron North America Exploration, and/or Agent for

Service. (Rec. doc. 9). She received no response and, as of September 12, 2019 (the 90th day after suit was filed) she had taken no further action to perfect service.

On September 25, 2019, this Court, seeing no activity in the record subsequent to suit being filed, issued its Rule to Show Cause why Plaintiff's lawsuit should not be dismissed for failure to prosecute. (Rec. doc. 3). According to Plaintiff's counsel, it was on that very day that she requested a summons be issued to the agent for Chevron North America Exploration. (Rec. doc. 9). That tactic apparently worked, because Chevron appeared in the case on October 4, 2019 seeking an extension of time to file responsive pleadings. (Rec. doc. 6). Chevron having appeared by the deadline for Plaintiff to show cause, the matter was moot and the Court deemed the Rule to Show Cause "satisfied." (Rec. doc. 10).

As noted above, Chevron makes two timeliness arguments in favor of dismissal. First, it argues that Plaintiff has not demonstrated good cause to avoid dismissal for his failure to serve Chevron within the 90 days prescribed by Rule 4(m). Plaintiff suggests that the Court <u>already</u> made a good-cause determination when it deemed its Rule to Show Cause "satisfied." While the Court did not make such a finding earlier (its decision to deem the Rule "satisfied" was based on mootness, *i.e.*, Chevron had already been served and appeared in the lawsuit), the Court cannot, however, say that Plaintiff's claims should be dismissed as untimely under Rule 4(m).

The question is somewhat complicated by the issue raised in Chevron's second timeliness argument – that because it was not served within the prescribed 90-day window for service, the applicable 90-day limitations period on Plaintiff's claims was no longer tolled by the filing of the suit. When the 90-day period for service lapsed on September 12, 2019, there were only nine days left in the 90-day limitations period. Absent a finding by this Court

that Plaintiff's late service can be excused for some reason, the limitations period on Plaintiff's claims would have run on September 21, 2019 – four days before summons was requested by Plaintiff's counsel. This means that a dismissal <u>without</u> prejudice of Plaintiff's claims for failing to timely serve the Complaint under Rule 4(m) would effectively be a dismissal <u>with</u> prejudice because the limitations period ran on those claims on September 21, 2019 and they cannot be made subject of a new Complaint.

There is precedent in this Circuit addressing these very circumstances, *i.e.*, where a dismissal without prejudice under Rules 4 or 41 of the Federal Rules would deprive a Plaintiff of his day in court because any new claims would be barred by the applicable statute of limitations. In such cases, the Fifth Circuit has held that a dismissal without prejudice is akin to a dismissal with prejudice and that the heightened standard for dismissing cases with prejudice should apply. *See. e.g.*, *Lozano v. Bosdet*, 693 F.3d 485, 489-90 (5th Cir. 2012) ("When 'the applicable statute of limitations likely bars future litigation,' we review a district court's dismissal under Rule 4(m) by applying the standard applicable to a with-prejudice dismissal.") (quoting *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 326 (5th Cir. 2008)).

Dismissal with prejudice "is an extreme sanction that deprives a litigant of the opportunity to pursue his claim." *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 247 (5th Cir. 1980). Such dismissals should be in the interest of justice; they require "a clear record of delay or contumacious[3] conduct by the plaintiff." *Millan*, 546 F.3d at 326 (quotation marks and citation omitted). The Fifth Circuit has generally only affirmed such dismissals when the delay (1) was caused by the plaintiff himself, as opposed to by counsel; (2) resulted in actual prejudice to the defendants; or (3) was caused by intentional conduct. *Id.*

---

[3] "Contumacious" is an archaic word meaning stubbornly disobedient, rebellious, or willful.

10

Here, the record does not support dismissal. There is no evidence in the record to suggest that the delay in serving Chevron was caused by the Plaintiff himself or that it was caused by anyone's intentional conduct. In fact, it is undisputed that Plaintiff's counsel tried, but failed, to identify an agent for service of process for the named Defendant. (Rec. doc. 9). Consequently, counsel sought a waiver of service by mailing such a request to the President of Chevron North America Exploration, with no success. (*Id.*). While it is true that, when no waiver was received by her, counsel inexplicably delayed attempting service until prodded to do so by the Court in its Rule to Show Cause, summons was actually issued in the case only seven days after the 90-day period for serving the Defendant had lapsed.

Given that Plaintiff would be barred from bringing his claims in a new Complaint, these circumstances could hardly justify dismissal of those claims, unless Chevron could demonstrate real prejudice resulting from the untimely service of the Complaint. This it cannot do.

First, Chevron was aware of the claims and the Plaintiff's name, given the EEOC charge levied against it. Second, Plaintiff's counsel <u>did</u> send a copy of the Complaint, along with Plaintiff's name, to the President of Chevron North America Exploration. (Rec. doc. 9). While Chevron declined to waive service based on that request, the request was received, according to evidence in the record. (Rec. doc. 9-2). Finally, the Court simply cannot <u>infer</u> prejudice to Chevron because it was served a week or so later than it should have been.

Even if the Court divined from this record that late service was the result of purposeful delay or stubbornly disobedient, rebellious or willful conduct, in order to dismiss Plaintiffs claims as untimely in these circumstances, the Court would also have to expressly find that a lesser sanction than dismissal would be ineffective or inappropriate. *See Long v.*

*Simmons*, 77 F.3d 878, 879-80 (5th Cir. 1996). The panoply of lesser sanctions has been described as including "[a]ssessments of fines, costs, or damages against the plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings. . . ." *Clewis v. Medco Health Solutions, Inc.*, No. 12-CV-5208, 2014 WL 840026 at *3 (N.D. Tex. Mar. 4, 2014). The Court will explain its decision regarding lesser sanctions below, as it has determined that dismissal owing to untimeliness is unwarranted.

### C. *The Adequacy of Plaintiff's Factual Allegations*

As noted, Chevron also takes issue with Plaintiff's factual allegations, essentially arguing that his Complaint is a lengthy amalgam of petty grievances and conclusory statements that, as they are expressed in the Complaint, do not pass muster under the requirements of *Twombly* and *Iqbal*. More specifically, Chevron complains that national-origin discrimination is not actionable under § 1981 and that Plaintiff has failed to allege the specific facts necessary to state plausible claims for discrimination, hostile work environment, and retaliation.

To a large degree, the Court agrees with Chevron. After announcing that his claims are brought "under Title VII of the Civil Rights Act of 1964 ("Title VII"), Title I of the Civil Rights Act of 1991, and 42 U.S.C. § 1981 as amended, to correct unlawful employment practices on the basis of national origin, a hostile work environment, retaliation, a retaliatory hostile work environment," Plaintiff launches into a 25-page stream of consciousness-like recitation of grievances against various individuals apparently associated with or employed by Chevron – all under the banner "STATEMENT OF CLAIMS." (Rec. doc. 1, pp. 3-29).

There is no attempt by Plaintiff to link particular incidents to the various causes of action he seeks to bring against Chevron and, frankly, the Court finds that it borders on

impossible to try correlate the alleged facts to Plaintiff's various claims on its own. Many of these grievances are unactionable, yet Plaintiff faithfully recites them in detail, as if they might add up to a cause of action by virtue of their sheer weight. But that is not the law. Here are a few examples:

1. ¶26 (g): "Joel, when you fly with someone that nobody likes, you are guaranteed to fly more"; then, Lee Star (WM) expressed that it was Mr. Valentin's punishment to have to fly with John Doe (HM).
   *(The Court has no idea what this means or why it would be actionable).*

2. ¶26(h): "On August 1, 2015, John Doe (HM) was harassed again by Jeff Pope (WM) a pilot supervisor;… Jeff Pope (WM) made an insulting racially motivated comment to John Doe (HM) stating "Luis, is that what you used to get across from Cuba."
   *(The Court has no idea what this means or why it would be actionable).*

3. ¶26(l): " On July 4, 2016, Drew Barkley (WM), pilot and (HIPO) acting supervisor at the Venice base approached John Doe (HM) as he was working on the computer and asked him "John, when were you naturalized in the United States?"
   *(This is not actionable).*

4. ¶26(o): " On August 31, 2016, while working on a work computer in the Galliano operations building, Ben Schmerbauch (WM) called John Doe "Dirty___"(John Doe) not once but twice."
   *(This is not actionable).*

5. ¶14(e): "On January 14, 2010, … John Doe (HM) met with Doug Young (HM) in an effort to determine the basis of Mr. Youngs animosity towards him and during the conversation, he referred to him as 'Steve Judd's boy'" …
   *(This is not actionable).*

13

6. ¶14(p): "On June 1, 2013, ... Tony Brogan (WM) was complaining about being trained by John Doe (HM) and ... making comments to other employees that Mr. Doe (HM) was part of the 'Puerto Rican Mafia.'"
*(This is not actionable).*

(Excerpts taken from Rec. doc. 1)
(Court's comments in *italics*).

This is but a sample of what the Court finds are statements or conduct by Plaintiff's co-workers that are not actionable; there are many more. Moreover, as argued by Chevron and recognized by Plaintiff in his response to the present motion, many of these complaints fall outside the four- year limitations period prescribed by § 1981. And, finally, Plaintiff does allege national-origin discrimination throughout his Complaint, even if (as he now says) he really means to allege race discrimination. Having said this, <u>however</u>, the Court believes there is enough factual content in other areas of Plaintiff's Complaint for the Court to infer that there <u>may</u> be plausible claims to be made against Chevron and to justify allowing Plaintiff an opportunity to amend his Complaint.

An initial complaint must be construed liberally. *See* Fed.R.Civ.P. 8(f); *Jones v. State of Louisiana Through Bd. Of Trustees for Colleges and Universities*, 764 F.2d 1183, 1185 (5th Cir. 1985) (citing *Dickens v. Lewis*, 750 F.2d 1251, 1254 (5th Cir. 1984).

> Mere technical defects in a pleading do not provide a basis for dismissal. This Court has stated that "[t]he policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading."

> *Jones*, 764 F.2d at 1185 (quoting *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

Here, the Court finds under the circumstances that it should grant Plaintiff leave to amend his Complaint in the following non-exhaustive particulars: each cause of action should be pleaded separately and the facts supporting each element should be pleaded as facts, not conclusory allegations. Unless Plaintiff intends to explain a basis for doing so, factual allegations outside the applicable statute of limitations should not be included and Plaintiff should avoid pleading irrelevant, non-actionable petty grievances solely to add to the page count of the Complaint.

In short, Plaintiff shall "make explicit that which is implicit" in his Complaint. *Lewis v. Integrated Medical Systems Intl., Inc.*, No. 14-CV-0716, 2015 WL 7449562 at *2 (E.D. La. Jun. 2, 2015).

Moreover, Plaintiff shall identify himself in the amended Complaint. The Court finds no cause or justification to allow Plaintiff to proceed anonymously in this action.

**Because the Court is ordering Plaintiff to amend his complaint as a "lesser sanction" for untimely service in lieu of dismissing this action, this is the only amendment that will be allowed.**

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is denied. No later than **February 12, 2020**, Plaintiff is to file an amended Complaint consistent with this Order and Reasons.

New Orleans, Louisiana, this  30th  day of      January     , 2020.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE